1642

The STATE, Respondent v. Thomas K. ADAMS, Appellant.

(403 S.E. (2d) 678)

Court of Appeals

*J. Michael Turner* of *Culbertson, Whitesides & Turner,* Laurens, *for appellant.*

*Abigail Rogers* of *S.C. Dept. of Highways and Public Transp.,* Columbia, *for respondent.*

Heard March 12, 1991; Decided April 8, 1991.

Rehearing Denied May 3, 1991.

GOOLSBY, Judge:

Thomas K. Adams appeals the order of the Circuit Court affirming his conviction in the Magistrate's Court for driving under the influence. The issues in this case relate to lost evidence. We affirm.

Adams' conviction came after two trials ended in mistrial. Before the third trial began, Adams moved to dismiss the DUI charge because the State never produced, pursuant to his motion to compel disclosure, the original record of the results of a breathalyzer test administered him following his arrest and because the magistrate after the second trial lost an original and carbon copy of a breathalyzer operator's test report, a photograph, a doctor's report, and a garage report that were offered in evidence during the first two trials.

## I.

Adams contends the failure of the State to produce the original record of the breathalyzer test results deprived him of due process. He claims the document

constitutes favorable evidence in that, had it been produced, it would have raised a factual question concerning the validity of the breathalyzer test. The Circuit Court, relying on *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. (2d) 413 (1984) and *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. (2d) 342 (1976), held no due process violation occurred because the record did not reflect that the document had an apparent exculpatory value before it was lost.

We agree with the Circuit Court.

The only evidence relating to the sought-after document was Adams' testimony that he underwent a breathalyzer test, that he saw the test operator "put something in the machine," that "[w]hen [he] pulled it out . . . it looked like the starting needle was about the width of my thumb from the start line," and that the State lost the document.

If Adams' purpose in wanting to introduce the document was simply to bring the validity of the breathalyzer test given him into question, its loss caused him no prejudice. The State did not offer the results of the breathalyzer test in evidence. *Cf. Roach v. Martin*, 757 F. (2d) 1463 (4th Cir. 1985), *cert. denied*, 474 U.S. 865, 106 S. Ct. 185, 88 L. Ed. (2d) 154 (1985) (a defendant suffered no prejudice because of defense counsel's failure to interview an officer regarding the circumstances under which the defendant gave the officer an oral statement on his arrest where the statement was never introduced into evidence); *Brown v. U.S.*, 6 F. (2d) 522 (4th Cir. 1925) (the refusal of a motion to suppress certain evidence held not prejudicial where the evidence was not offered during the trial). Although the prosecutor, without objection, told the jury during closing argument that Adams "didn't pass" the breathalyzer test, Adams himself disclosed as much during his direct examination. *See State v. Sinclair*, 275 S.C. 608, 274 S.E. (2d) 411 (1981) (the trial court properly denied the defendant's motion for a mistrial where the substance of the solicitor's remark in his closing statement was already in evidence).

If, on the other hand, Adams' purpose was to exploit any exculpatory potential the document might have had, he falls short of meeting the standard of constitutional materiality because he failed to make some showing that the document in fact possessed an "exculpatory value that was apparent" before the State lost it. *Trombetta*, 467 U.S. at 489, 104 S. Ct. at

2534, 81 L. Ed. (2d) at 422; *cf. State v. Jackson*, — S.C. —, 396 S.E. (2d) 101 (1990) (the materiality of a destroyed videotape held established where an assistant solicitor based the decision to drop the charges against the defendant because of the videotape). Since Adams offered no evidence regarding how the breathalyzer test results were affected by the starting needle's being at about a thumb's width "from the start line" when the test operator removed the record of those results from the machine, we can only speculate about how the needle's placement at that time affected the test results. Speculation about such things, our Supreme Court has held, will not do. *See State v. Newton*, 274 S.C. 287, 262 S.E. (2d) 906 (1980) (a defendant's contention that missing simulator and test ampoules used by breathalyzer operator in administering a breathalyzer examination to the defendant were potentially exculpatory constituted mere speculation where the defendant did not attempt to show that the ampoules could be subjected to scientific retesting and did not produce an expert witness to demonstrate what the possible results would be).

In reaching our decision, we note "[t]he record contains no allegation of official animus toward [Adams] or of a conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488, 104 S. Ct. at 2533, 81 L. Ed. (2d) at 422.

## II.

Adams also contends the loss by the magistrate of the original and carbon copy of the breathalyzer operator's test report between his second and third trials deprived him of due process and denied him a fair trial. This contention, however, is not properly before us since the Circuit Court nowhere addressed it in its order affirming the magistrate. *See Burwell & Dunn Co. v. Chapman*, 59 S.C. 581, 38 S.E. 222 (1901) (a ruling in the Magistrate's Court that was not passed on by the Circuit Court upon the plaintiff's appeal to the Circuit Court cannot be raised on the defendant's appeal to the Supreme Court).

In any case, Adams suffered no prejudice because of its loss. Adams proved by oral evidence what he had hoped to prove by the documents. He testified without contradiction or challenge that the original test report, which the State retained, varied from the carbon copy given him in that the orig-

inal was dated July 2 while the carbon copy was dated July 1. *See* 5A C.J.S. *Appeal & Error* § 1748, at 1091 (1958) ("[T]he exclusion of documentary evidence is harmless, where testimony has already been given concerning the contents thereof or the matters sought to be shown thereby."); *id.* § 1753, at 1101 ("[E]rror committed in rejecting written evidence may be cured by the subsequent reception of oral evidence establishing the fact sought to be proved. . . .").

### III.

Because Adams submits no argument in his brief regarding the other lost items, we do not consider any exception concerned with them. *Blakeley v. Rabon,* 266 S.C. 68, 221 S.E. (2d) 767 (1976); *Lackey v. Treadwell,* 282 S.C. 81, 316 S.E. (2d) 724 (Ct. App. 1984).

Affirmed.

SANDERS, C.J., and GARDNER, J., concur.